Ex Parte Rosa Cruz Vázquez, Petitioner and Appellant.

No. 3534. Argued April 1, 1925.—Decided May 8, 1925.

1. WILL—HOLOGRAPHIC WILL.—A family letter which possesses all of the requirements of section 696 of the Civil Code and indicates by apt words the deliberate intention of the writer to provide for the disposal of his property after his death has the character of a holographic will.

2. ID.—ID.—A holographic will may be made in the form of a letter.

3. ID.—ID.—A letter in which the writer informs his sister, the addressee, that he had taken out a life insurance policy and names her as his heir in the event of his sudden death clearly expresses the deliberate intention of the testator to leave his property to her upon his death.

4. ID.—EVIDENCE—CORROBORATIVE EVIDENCE — DEATH CERTIFICATE. — Although a death certificate is evidence only of the death and identity of the deceased, the statements therein may have weight in connection with other elements of corroborative evidence.

5. ID.—PROTOCOLIZATION—RES JUDICATA.—An order for the protocolization of a holographic will does not produce the effect of *res judicata*.

District Court of Mayagüez, Angel Acosta, J. Judgment dismissing a petition for the protocolization of a holographic will. *Reversed.*

*Alemañy & Ramírez* for the appellant. *José Sabater* and *José E. Figueras, Fiscal,* for the contestants.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Hiram Vázquez López, a native of Porto Rico, died in the town of Aguada de Pasajeros, Island of Cuba, on January 17, 1923.

On May 5, 1916, he wrote a letter from Horquita, Cuba,

stating the date in full, to his sister Rosa Cruz Vázquez. That letter reads in part as follows:

"Rosa: In case anything should happen to me I wish to inform you that I have taken out a life-insurance policy for $5,000 in my name in the Pan American Life Insurance Company of New Orleans, which I have had in my possession since April 6th free of encumbrance. It bears No. 8378 s. I am informing you of this because it is well for you to know it, inasmuch as you are my only unmarried sister and therefore the only heir if anything should happen to me. Say nothing about this; keep these two sheets concerning this matter and that is all."

Based on the statements of this paragraph of the letter, Rosa Cruz Vázquez filed a petition in the district court wherein she alleged that the said letter was the holographic will of Hiram Vázquez López designating her as his sole and universal heir, praying that as her brother had died a bachelor without descendants or ascendants the said will be protocoled in the notarial office of Juan Alemañy Sosa so that it should produce all legal effects and acquire the conditions of authenticity and publicity necessary to all private wills.

The petition was accompanied by a certificate of the death of Hiram Vázquez López and the petitioner also prayed that, in accordance with section 701 of the Civil Code, the court cause to be summoned the brother and other sister of the deceased named Otilio and Mérida Vázquez and his minor nephews and nieces Ernesto, Eneida, Jaime, Hada, Helma and Hiram Busquets y Vázquez. This was done and all of them appeared at the proceedings required by section 700 of the Civil Code, the minors being represented by the district attorney.

Evidence having been examined tending to identify the document, the court finally denied the petition on the following grounds: 1, That the intention of the testator that the letter presented as a holographic will should be considered as his last will was not clearly and manifestly stated

in the letter; 2, that letters, however express they may be concerning the disposition of property, can not be considered as holographic wills; 3, that it appears from the death certificate that the deceased made no will and left descendants, and, 4, that the letter possesses none of the conditions required by the Civil Code.

The errors assigned by the appellant are based on each of the grounds stated by the court in its judgment.

[1] It was established by uncontroverted testimony that the letter was wholly in the handwriting of Hiram Vázquez López, giving the year, month and day on which it was written, and was signed by him.

We must presume, therefore, that in stating in general terms in the last ground of its decision that the letter did not possess any of the requirements of section 696 of the Civil Code in order that it could be considered as a holographic will, the court was relying rather on the other grounds of its decision.

[2] The court below cites Scaevola, volume 12 (ed. of 1896), page 368, in support of the proposition that a holographic will can not be made in a letter and refers to the Civil Code of the Argentine which forbids it.

When Scaevola wrote his commentary the Spanish Civil Code prescribed as one of the formal requisites that a holographic will should be written on stamped paper, but later the statute was amended and that formality was omitted.

Manresa, vol. 5, p. 514, 4th ed., 1911, art. 688, comments as follows:

"As may be ascertained by comparing the text of the section under consideration as it appears in this edition with that of previous editions, the legislators have suppressed one of the requisites which in framing the Civil Code they considered essential for the validity of a holographic will, that is, its being written on stamped paper of the year of its execution. This amendment was made by the Act of July 21, 1904, which also amends article 732."

It is useless to say that in Porto Rico, with the change of sovereignty and of course before 1904, that requirement no longer was necessary by reason of the elimination of that source of revenue.

[3] As regards whether the intention of the testator is manifestly and clearly expressed in the letter said to be the holographic will of the deceased the question is more important. However, the language used by Hiram Vázquez López indicates clearly his deliberate intention to arrange for the disposal of his property after his death, thus complying with this essential requisite of every will. He informed the petitioner that he had taken out a life-insurance policy, stating the name of the company, the amount of insurance and the number of the policy. The testator, therefore, spoke of a contract which generally becomes legally effective after death and then stated in common language that inasmuch as she was the only unmarried sister, he named her his heir "in case anything should happen" to him, which in express and plain language means that she would be his sole heir in case of his death.

It does not seem necessary to have expressed more categorically the last will of the testator. Even if he had called the letter a will, which was not indispensable, in stating his intention of disposing of his property to take place after his death, he could not have done so in clearer form.

In the case of *Pastor* v. *Miró,* decided by the Supreme Court on March 30, 1925 (*ante,* p. 50), besides implying that a will may be made by a letter, the court distinguished the case decided by the Supreme Court of Spain on June 8, 1918, in which, notwithstanding the fact that the word "will" was used, the language employed by the testator was no clearer or more precise than that used in this case. The pertinent paragraph of the opinion of the Supreme Court is as follows:

"On the other hand, the words contained in the letter which the

appellant claims to be a holographic will and in the letters of al-
leged ratification, have not the character of a will, because, being
casual remarks contained in long business and personal letters, they
do not show the deliberate intention of the writer to arrange for
the disposal of his property after his death, which is an essential
requisite in wills.   This case is distinguished from the case decided
by the Supreme Court of Spain on June 8, 1918, by the fact that
in that case the intention to make a will appeared clearly from the
following: 'Peñafiel, October 24, 1915.  My beloved Pasicos: In
this, my first love letter, I make my will.  Everything is for you,
that you may always love me and never doubt the love of your
Matilde.'   The intention is disclosed not only by the use of the
word 'will,' although that was not absolutely necessary, but from
the entire context which shows the clear and manifest intention of
the writer to dispose of her property in case of her death, a requi-
site which we have been unable to find in the letter of July 17,
1919."   (34 P.R.R. 57-8).

[4] The last assignment of error is that the court be-
low gave credit to statements made in the death certificate
to the effect that Hiram Vázquez López was married, left
a legitimate daughter named Cary Vázquez y Figueroa and
had made no will.

A death certificate is evidence only of the death and
identity of the person named therein.  According to a ma-
jority of the judges the other statements made in it may
perhaps have some weight in connection with other elements
of corroborative evidence, but the minority considered that
they had no weight, being hearsay.

[5] On the other hand, as the protocolization of a holo-
graphic will is rather a matter of voluntary jurisdiction
and the order for its protocolization does not produce the
effect of *res judicata,* the rights of whatever lawful heirs
there may be or of anybody who feels aggrieved by that
order are saved and may be asserted in an ordinary action.

For all of these reasons the judgment must be reversed
and substituted by another holding that the authenticity of
the holographic will made by Hiram Vázquez López on

March 5, 1916, has been established and ordering that it be protocoled.